**Opinion issued February 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00464-CR

## NO. 01-11-00465-CR

————————————

**DIETER HEINZ WERNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Case Nos. 1262894 & 1270826

**O P I N I O N**

Appellant, Dieter Heinz Werner, was charged with stalking in two separate indictments.[1]  Appellant pleaded not guilty.  After the jury found appellant guilty on both offenses, the trial court assessed punishment at 10 years' confinement on each offense, to run concurrently.  In seven issues, appellant argues (1) the trial court erred by denying his motion to have the two indictments severed and tried separately; (2) the trial court erred by denying his motion to suppress statements he made to a police officer; (3) the trial court improperly admitted certain evidence and improperly excluded other evidence; (4) the trial court abused its discretion by denying his request for a jury instruction; (5) the trial court abused its discretion by denying his request to charge the jury on lesser included offenses; (6) the evidence in support of the first indictment was factually insufficient; and (7) the evidence in support of the second indictment was legally and factually insufficient.

We reverse and remand both causes for new trial.

## Background

Appellant and the complainant, Donna Daffern, dated for a little more than one year from late 2008 to January 2010.  After he broke up with Daffern, appellant continued to text and call her.  Many of appellant's texts indicated appellant knew where Daffern or her daughter were at various times of the day.

---

[1]     *See* TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp. 2012).

2

On one occasion, Daffern was supposed to meet appellant for drinks but then cancelled because her grandmother was in the hospital. Daffern had gotten permission for her daughter to stay the night at her boyfriend's house from the boyfriend's mother. Daffern's daughter drove Daffern's car to her boyfriend's house. The next day, appellant called Daffern and told her that her daughter had spent the night at her boyfriend's house. Appellant subsequently sent letters to Daffern's mother and grandmother telling them that Daffern had allowed her daughter to stay overnight at her boyfriend's house. Appellant stated the evidence was on his computer if they wanted to see it.

On another occasion, while en route to the rodeo from work, she received a text from appellant stating, "I think you should go to the rodeo." Daffern knew her friend, Sergeant C. Montemayor, would be at the rodeo. Sergeant Montemayor works for the Harris County Sherriff's department. At the particular time, he was overseeing security at the rodeo as extra employment. Upset, Daffern told Sergeant Montemayor about the text and requested that he search her car for a tracking device. He did so and quickly found one attached to her car. Sergeant Montemayor gave the tracking device to Daffern, recommending that she file a police report.

Not long after the tracking device was removed from her car, Daffern received additional texts from appellant indicating he knew where she was at

3

various times. One day, appellant texted her, saying, "Pissed me off when I saw you at krogers [sic] and you turned your head. I would never treat you like that." Daffern had been at Kroger's that day, but had not seen appellant there. Earlier that same day, appellant texted her, saying, "Should have answered the phone and not ignored me again. Pissed me off. Now I show you. PremaD."

Six days later, appellant texted her that he knew she had parked in a Dairy Queen parking lot for many hours. Daffern was visiting her aunt, whose home was behind a Dairy Queen where Daffern had parked. Later that night, Daffern stopped by a bar where she used to work and received a text from appellant telling her that he was at a bar a short distance down the same road and invited her to join him for a drink. The next day, appellant texted her, correctly indicating that Daffern had gone to work early that morning, that she had gone to Buccee's the day before, and that her daughter—who had the car—was at a McDonald's.

A little more than a month after the first tracking device was found on Daffern's car, Daffern's daughter and a friend returned to the car after watching a movie and found someone had slashed three of the tires on her car. A witness identified the slasher's car as a black Mercedes. Appellant owned and drove a black Mercedes. Daffern testified at trial that appellant had slashed two tires on her car before. Daffern testified that having two tires slashed had been an easy fix. Having three tires slashed required having a flatbed wrecker tow it.

4

Daffern went to the movie theater, where she told the police officer on the scene that there was probably another tracking device on the car. She found the second tracker in the same location as the first. Daffern kept the tracking device.

Both before and after this event, Daffern told appellant to leave her alone and to stop harassing her and her family. Daffern had not filed a police report after she found the first tracking device because she was worried she would not be able to prove it belonged to appellant. She felt he would become very mad if she made an accusation and it could not be proved.

Nevertheless, some time after the second tracking device was found, Daffern went to the police, seeking to bring charges against appellant. Appellant was charged under an indictment for stalking, and a magistrate judge signed an order forbidding appellant from going within 200 feet of Daffern's home or work. The order was effective for 60 days.

While the order was in effect, Daffern saw appellant drive past her home. Six days later, Daffern's daughter dropped Daffern off at a gas station to carpool with a friend to work. After Daffern got out of the car, her daughter saw appellant drive by the gas station. The next day, Daffern's daughter saw appellant drive by Daffern's home.

On the 61st day after the order was issued, Daffern drove to her bank early in the morning. She saw appellant's car parked across the street. The car was

5

parked at a drive-through window that was no longer operating. Daffern saw a police car parked at a gas station next to the bank. Daffern went to the gas station, walked inside, and told the police officer, Officer V. Werner, about seeing appellant's car. Daffern was panicked and emotional when she approached Officer Werner.

Officer Werner drove across the street and approached appellant. When Officer Werner asked appellant why he was there, appellant stated he was waiting for the nearby Home Depot to open. It was already open, however. Next, appellant stated that he was getting gas, even though he was parked across the street from the gas station and had a full tank of gas. Appellant then said he was there to get a cappuccino at the gas station. Finally, appellant asserted that he had pulled into the parking lot to jot down some notes. The notepads appellant had with him were blank.

Appellant admitted to having been arrested before. Believing the magistrate judge's order to still be in effect and believing appellant to be in violation of the order, Officer Werner arrested appellant. After the arrest, Daffern told Officer Werner about the times she and her daughter had recently seen appellant drive past them. Appellant was subsequently charged under a second indictment for stalking.

Prior to trial, appellant filed a motion to sever the offenses. In the motion he stated that the State proposed to join or consolidate the two offenses for trial. He

6

then asserted his statutory right to have the causes severed and tried separately. Again at trial, appellant asserted the right to sever the causes and be tried separately. The trial court denied the motion based on judicial economy, lack of surprise, and lack of undue prejudice.

The evidence at trial established that appellant had purchased tracking devices on-line on October 1, 2009; March 6, 2010; and on March 12, 2010. The purchase orders also evidenced that appellant purchased "Livewire monthly service 10 second updates." The evidence also established that appellant continued to pay for the monthly service with Livewire for the months between the purchases and that appellant had an account with Livewire that tracked certain tracking devices. The tracking history was consistent with where Daffern said she had been on certain dates and was consistent with text messages that appellant had sent Daffern on those dates, such as the time Daffern had been at Kroger's and the time that Daffern had parked at a Dairy Queen. The tracking history also showed the tracking device to be in the parking lot near the movie theater on the night Daffern's tires were slashed.

## Severance of Two Charges for Trial

In his first issue, appellant argues that the trial court erred by denying his motion to sever the two causes for separate trials.

## A.    Standard of Review & Applicable Law

Section 3.02 of the Texas Penal Code provides, "A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a) (Vernon 2011). It further provides that if the State intends to try two separately charged offenses in one trial, it must provide written notice "not less than 30 days prior to the trial." *Id.* § 3.02(b). Section 3.04 provides, "Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses." *Id.* § 3.04(a) (Vernon 2011).

Section 3.04 is mandatory; it does not give any discretion to the trial court. *Id.* Nor does the issue of whether the section has been invoked involve any determinations of credibility or demeanor. "When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Accordingly, we review the trial court's ruling de novo.

## B.    Analysis

It is undisputed that Werner filed a pre-trial motion invoking his right to a severance of the two separately charged offenses of stalking. *See* TEX. PENAL

CODE ANN. § 3.04(a). He also re-urged his right to a severance at the beginning of trial, upon learning that the State nevertheless intended to proceed to trial under both charged offenses. The trial court denied the motion based on judicial economy, lack of surprise, and lack of undue prejudice. These are not matters relevant to whether appellant is entitled to a severance, however. *See Waythe v. State*, 533 S.W.2d 802, 804 (Tex. Crim. App. 1976) (holding section 3.04(a) is mandatory and trial court errs by denying motion to sever).

Having decided the trial court erred by denying the motion, we must determine whether the error was harmful. Whether the error requires reversal is controlled by rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b) (requiring any nonconstitutional error that does not affect substantial rights to be disregarded); *see also Llamas v. State*, 12 S.W.3d 469, 470–71 (Tex. Crim. App. 2000). Accordingly, we must determine whether the error affected a substantial right of appellant's. TEX. R. APP. P. 44.2(b). "To make this determination, appellate courts must decide whether the error had a substantial or injurious [e]ffect on the jury verdict." *Llamas*, 12 S.W.3d at 471 n.2.

"[I]f [the] concrete data necessary to conduct a harm analysis is absent, a harmless error test must nevertheless be conducted, and the absence of data is simply taken into account in determining whether or not the harmless error test is passed or failed." *Id.* at 471. In performing the harm analysis, we "must consider

9

everything in the record including all the evidence admitted at trial, the closing arguments, and . . . comments during voir dire." *Id.* Our analysis is guided by recognition of the two concerns upon which the statute rests: "(1) that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged." *Id.* at 471–72.

As indicated by the Court of Criminal Appeals, we begin our analysis by noting that there is very little in the way of "concrete data" in the record to guide our analysis. *See id.* at 471. Instead, much of our analysis involves circumstantial consideration of the possible impact of the erroneous denial of the motion to sever. Accordingly, the absence of data plays a strong role in our analysis. *See id.*

During voir dire, the State asked the venire panel if any of them felt they could not set aside their "own personal beliefs in the case and judge the case strictly on what [they heard] in court." One venire member expressed the following reservation:

> I am basing it on the fact that you have two different times that it is done; and I say that it was a push-off from the start; and, if it is the first time and I am back doing it a second time, then I don't have any tolerance for it either.

10

Another venire member agreed, saying, "I kind of agree with Juror No. 23. Given the two stories here and hearing some of these stories, I don't think that can be fair."

A similar issue arose in *Llamas*. During that trial, two venire members stated during voir dire that if the State proved one offense, they were likely to assume the defendant was guilty of the other one. *Id.* at 472. The State distinguishes *Llamas* by arguing that, in the present case, there is an ambiguity about whether the venire members were talking about the two offenses or the multiple instances of stalking identified in either offense. *See* TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp. 2012) (requiring acts constituting stalking to occur on more than one occasion to constitute offense). We agree that the venire members' answers are ambiguous for the reasons stated. We disagree with the State, however, that this ambiguity weighs in their favor. Assuming without deciding that the venire members were talking about being biased by the presentation of multiple acts within the same offense, the logical conclusion to be drawn is that they would become that much more biased with proof of even more similar events in a separately charged offense. This alternative creates a more harmful error, not less.

The State also attempts to distinguish *Llamas* by pointing out that the two venire members in this case were not on the jury. There is no indication in *Llamas*,

11

however, that the venire members in question were placed on the jury either. *See id.* at 472. Moreover, the court acknowledged that the significance of the venire members' statements was the presence of "the very threat" of comingling of evidence for each charged offense in making a guilt or punishment determination. *Id.*

Next, we consider the evidence presented at trial. The State argues,

Arguably, the evidence establishing both instances of stalking was the same, although they occurred on different dates, the primary evidence to demonstrate appellant knew [Daffern's] whereabouts was the GPS trackers. Inclusion of the second case only added testimony regarding appellant following complainant in July, *but the jury had already heard a wealth of evidence showing he had been following her for months*.

(Emphasis added.)

The State fails to recognize that this very argument establishes harm, not disproves it. First, we are troubled by the State's claim that "the evidence establishing both instances of stalking was the same." This is completely false. The first indictment alleged that appellant had committed acts of stalking on or about March 11, 2010, and April 3, 2010, through April 15, 2010. The second indictment alleged that appellant had committed acts of stalking on or about July 13, 14, and 16, 2010. Evidence of what appellant did in March and April is no proof of what appellant did in July, and evidence of one does not establish the other. It is precisely this kind of reasoning presented by the State that section 3.04

12

was designed to *prevent*. *See Llamas*, 12 S.W.3d at 471–72 (recognizing one concern statute was meant to alleviate was that jury would infer that because accused committed other crimes, he probably committed crime charged); *see also* TEX. R. EVID. 404(b) (providing "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith").

Similar to this argument, the State suggests the Court of Criminal Appeals's decision in *Scott* is applicable to this case. *Scott v. State*, 235 S.W.3d 255 (Tex. Crim. App. 2007). We disagree. In *Scott*, the defendant was charged with three offenses, inducing sexual performance by a child, producing or promoting a sexual performance by a child, and possession of child pornography. *Id.* at 256. In reviewing whether the defendant was harmed by the trial court's refusal to sever the trials for the charged offenses, the Court of Criminal Appeals determined that the evidence underlying each charged offense was part of the same set of facts. *Id.* at 259. As a result, in a trial of the two, non-severable offenses, "common sense compels the conclusion that the jury would have known that Scott possessed the videotapes (i.e., that Scott was guilty of possession of child pornography [the severable offense]) because it would have been made clear that they were found in his possession." *Id.* at 259–60. Proof of the third offense would have been

13

established by proof of the first two offenses. *Id.* Accordingly, the defendant did not suffer any harm by having the third offense presented to the jury. *Id.*

The same cannot be said here. Contrary to the State's claims, the two stalking charges brought against appellant do not rely on the same evidence: the first relies on events occurring in March and April of 2010, and the second relies on events occurring in July 2010. Admission of evidence relevant to one offense would not lead the jury to inevitably conclude appellant had committed the other offense.

Even more concerning is the State's assertion that the jury having heard "a wealth of evidence" showing appellant had been following her for months before July is somehow proof that there is no harm in failing to sever the trials. It is the very concern that a "wealth" of evidence supporting one charged offense would influence the jury's decision on a separately charged offense that gave rise to the statute. *See Llamas*, 12 S.W.3d at 471–72.

Along these lines, the State argues that "it is feasible [that] evidence from the first case would have been admissible in the second trial." *See* TEX. R. EVID. 404(b) (providing evidence of other crimes, wrongs or acts may be admissible to prove matters "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). While this is no doubt

14

true, this does not mean that appellant was not harmed by the failure to sever the trials.

In *Warmowski*, the Court of Criminal Appeals quoted with approval the dissent from an earlier opinion of the court on the distinction between a trial of two charged offenses and a trial of one charged offense that includes evidence of another offense. *Warmowski v. State*, 853 S.W.2d 575, 580 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (quoting *Sifford v. State*, 741 S.W.2d 440, 442–43 (Tex. Crim. App. 1987) (Teague, J., dissenting)). In *Sifford*, Judge Teague argued that there was a distinct and important difference between offering evidence of an extraneous offense and simultaneously prosecuting the other offense. *Sifford*, 741 S.W.2d at 442 (Teague, J., dissenting). Specifically, he explained,

> Initially, pleading the separate offense as a distinct count of the indictment obviates the need for any further determination of its admissibility. The evidence comes in automatically. Furthermore, it goes to the jury at face value and for all purposes, without the usual limiting instructions. Finally, apart from the strategic benefits thus inuring to the prosecution, the accused is legally disadvantaged. He may not freely admit the extraneous matter in his own testimony, hoping to deflate prejudicial inferences, since he has been placed formally in jeopardy of conviction and punishment for it. None of these considerations attend the ordinary case, where evidence of an extraneous offense is admitted solely to illuminate the charged offense, and not to enlarge the defendant's jeopardy.

*Id.* at 442–43.

15

While *Warmowski* has since been overruled for the proposition that denial of a motion to sever requires reversal without a harm analysis, *see Cain*, 947 S.W.2d at 264, the Court of Criminal Appeals has since held that "*Warmowski* is still instructive regarding the importance of a defendant's right to severance and the concerns reviewing courts should examine when conducting a harm analysis." *Llamas*, 12 S.W.3d at 470–71. We recognize, then, the distinction between a trial for an offense placing "the appellant formally in jeopardy of conviction and punishment for it" and introduction of evidence of other crimes "admitted solely to illuminate the charged offense." *Sifford*, 741 S.W.2d at 443 (Teague, J., dissenting). Accordingly, the fact that the evidence of one charged offense may have been admissible under rule 404(b) in the trial of the other charged offense is no proof that appellant was not harmed by being forced to proceed to trial under both together. In fact, it is some suggestion of the opposite. By proceeding to trial on both offenses together, appellant was denied the opportunity to make strategic decisions of what evidence to challenge on admissibility grounds or what evidence to admit to in the hopes of deflating its prejudicial effect. *See id.*

Finally, we consider the State's closing arguments. The State argues that there is no suggestion of harm in its closing argument. We disagree. The State, in its closing, made no attempt to draw a distinction between the evidence that supported the first charged offense and the evidence that supported the second

16

charged offense. Instead, the State switched between discussions of evidence of both offenses multiple times.

In one specific circumstance, the State discussed the tire-slashing event, which is relevant to the first charged offense. The State argued that, after that event, Daffern knew appellant was not going to stop.[2] The State then asked the jury, "[A]nd how do we know that he wasn't going to stop? We know because when he is charged, he is told, 'Stay away from her. Don't contact her.'" The State then discussed how Daffern saw him parked across the street when she was at the bank, which is relevant to the second charged offense. By discussing the facts supporting each offense interchangeably, the State's closing argument further blurred the distinction between the two offenses.

The State does not point to any portion of the record that would ameliorate against any of these considerations, and we find none. Considering the comments during voir dire, the evidence admitted at trial, and the closing arguments and also considering the absence of concrete data to fully perform the harm analysis, we cannot hold that the error did not affect appellant's substantial rights.

We sustain appellant's first issue.

---

[2] After the tire-slashing incident, Daffern went to the police, seeking to bring charges against appellant.

17

## Remaining Issues to Be Considered

By sustaining appellant's first issue, we must reverse and remand for a new trial. *See* TEX. R. APP. P. 44.2(a), (b) (requiring reversal for nonconstitutional error that affects appellant's substantial rights), 43.2(c), (d) (identifying rendition and remand as two kinds of reversal); *Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010) (holding appellate courts render judgment of acquittal only when trial court's ruling amounts to de facto acquittal or appellate court finds evidence was legally insufficient to support conviction). An appellate opinion must address every issue that is raised and that is *necessary* to a final disposition. TEX. R. APP. P. 47.1. Accordingly, we do not need to address any remaining issues that would only provide appellant with the same relief we have already granted.

Appellant argues in his seventh issue that the evidence is legally insufficient to support his conviction under the second indictment. Affirming on this ground would result in a rendition of the judgment. *Benavidez*, 323 S.W.3d at 181. Because that would provide greater relief, we must address it.

Appellant argues in his sixth issue that the evidence is factually insufficient to support his conviction under the first indictment. The State suggests that, because appellant relied on *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), *overruled by Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) for the standard of review for his sixth issue and because the Court of Criminal

18

Appeals has subsequently overruled *Clewis*, appellant has failed to raise a reviewable issue in his sixth issue.

Factual sufficiency review has not been eliminated, however. Instead, the Court of Criminal Appeals in *Brooks* held the standard of review for factual sufficiency the same as the standard of review for legal sufficiency. *Compare Brooks*, 323 S.W.3d at 902 (holding there is no meaningful distinction between the current legal-sufficiency standard of review and the factual-sufficiency standard of review), *with id.* at 926 (Cochran, J., concurring) (holding that the legal-sufficiency standard of review is the only standard that can be followed). Accordingly, appellant has properly raised an issue for our review.

Before *Brooks*, the remedy for factual insufficiency was remanding for a new trial. *Id.* at 904. Following *Brooks*, an acquittal is required if the evidence is insufficient under its standard of review. *Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Benavidez*, 323 S.W.3d at 181. Accordingly, the issue, if sustained, would provide greater relief, and we must address it.

Appellant argues in his second and third issues that the trial court abused its discretion by denying his motions to suppress certain evidence. Harmful error from the denial of a motion to suppress requires reversing and remanding for a new trial. *Tijerina v. State*, 334 S.W.3d 825, 835 (Tex. App.—Amarillo 2011, pet.

19

ref'd). Additionally, analysis of whether the evidence should have been suppressed would not influence our analysis of the sufficiency of the evidence issues remaining. *See Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (holding "all evidence admitted at trial—including improperly admitted evidence—is considered in a legal sufficiency review"). Accordingly, we do not need to address these issues.

Finally, appellant argues in his fourth and fifth issues that the trial court abused its discretion by denying his request for an instruction on the expiration of his protective order and his request for inclusion of lesser included offenses in the jury charge. Harmful failure to include proper instructions in the charge, including instructions on lesser-included offenses, results in a new trial. *Hayes v. State*, 728 S.W.2d 804, 810 (Tex. Crim. App. 1987). Accordingly, we do not need to address these issues.

## Sufficiency of the Evidence

In his sixth and seventh issues, appellant argues the evidence is legally insufficient to support his two convictions.

### A.    Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49,

53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See id.* at 54. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.

App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.    First Charged Offense of Stalking**

As it pertains to appellant, a person commits the offense of stalking if he, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that (1) he knows or reasonably believes the other person will regard as threatening bodily injury or death for the other person, (2) causes the other person to be placed in fear of bodily injury or death, and (3) would cause a reasonable person to fear bodily injury or death for herself. TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp. 2012). For the first charged offense, the State alleged that these acts took place on or about March 11, 2010, and April 3, 2010, through April 15, 2010. The specific

22

acts that the State alleged appellant committed were tracking Daffern's vehicle with one or more tracking devices, sending Daffern actionable text messages on her cellular phone, and damaging Daffern's tires.

The evidence establishes that on March 11, 2010, while en route to the rodeo from work, she received a text from appellant stating, "I think you should go to the rodeo." Daffern knew her friend, Sergeant Montemayor, would be at the rodeo. Upset, Daffern told Sergeant Montemayor about the text and requested that he search her car for a tracking device. He did so and quickly found one attached to her car.

Not long after the tracking device was removed from her car, Daffern received additional texts from appellant indicating he knew where she was at various times. One day, appellant texted her, saying, "Pissed me off when I saw you at krogers [sic] and you turned your head. I would never treat you like that." Daffern had been at Kroger's that day, but had not seen appellant there. Earlier that same day, appellant texted her, saying, "Should have answered the phone and not ignored me again. Pissed me off. Now I show you. PremaD."

Six days later, appellant texted her that he knew she had parked in a Dairy Queen parking lot for many hours. Daffern was visiting her aunt, whose home was behind a Dairy Queen where Daffern had parked. Later that night, Daffern stopped by a bar where she used to work and received a text from appellant telling her that

23

he was at a bar a short distance down the same road and invited her to join him for a drink. The next day, appellant texted her, correctly indicating that Daffern had gone to work early that morning, that she had gone to Buccee's the day before, and that her daughter—who had the car—was at a McDonald's.

On April 15, 2010, Daffern's daughter and a friend returned to the car after watching a movie and found someone had slashed three of the tires on her car. A witness identified the slasher's car as a black Mercedes. Appellant owned and drove a black Mercedes. Daffern testified at trial that appellant had slashed two tires on her car before. Daffern testified that having two tires slashed had been an easy fix. Having three tires slashed required having a flatbed wrecker tow it.

Daffern went to the movie theater, where she told the police officer on the scene that there was probably another tracking device on the car. She found the second tracker in the same location as the first.

Both before and after this event, Daffern told appellant to leave her alone and to stop harassing her and her family. Daffern had not filed a police report after she found the first tracking device because she was worried she would not be able to prove it belonged to appellant. She felt he would become very mad if she made an accusation and it could not be proven.

The evidence at trial also established that appellant purchased tracking devices on-line on October 1, 2009; March 6, 2010; and on March12, 2010. The

24

purchase orders also evidenced that appellant purchased "Livewire monthly service 10 second updates." The evidence also established that appellant continued to pay for the monthly service with Livewire for the months between the purchases and that appellant had an account with Livewire that tracked certain tracking devices. The tracking history was consistent with where Daffern said she had been on certain dates and was consistent with text messages that appellant had sent Daffern on those dates, such as the time Daffern had been at Kroger's and the time that Daffern had parked at a Dairy Queen. The tracking history also showed the tracking device to be in the parking lot near the movie theater on the night Daffern's tires were slashed.

Appellant focuses most of his argument in this issue on whether there is sufficient evidence to tie him to the tracking devices found on Daffern's car. Appellant complains that the purchase orders "did not reference the serial numbers" and the purchase order and the tracking data from the website "did not reference[] each other." Appellant fails to establish, however, what effect this should have on our analysis. Daffern identified the tracking devices she removed from her car, and they were admitted into evidence. Furthermore, the evidence showed that appellant purchased three tracking devices and a subscription for a website that would update the location of the tracking devices on ten second intervals. The tracking history from the website was consistent with where Daffern

said she had been on certain dates and was consistent with text messages that appellant had sent Daffern on those dates. All of this evidence creates a very strong inference that appellant was tracking Daffern's vehicle with tracking devices.

Appellant also mentions other evidence not introduced at trial that he speculates would have made the connection from him to the tracking devices more certain. Appellant's complaints about the text messages that Daffern received amount to the same thing: discussion of hypothetical other evidence that might have made it more certain that Daffern received the texts from appellant or that Daffern had not deleted other relevant texts. These arguments are not relevant to a sufficiency of the evidence challenge. *See Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986) (holding "[w]hat is not in evidence is irrelevant to a determination of the sufficiency of the evidence").

Appellant also argues that there was no evidence that he slashed Daffern's tires. There was evidence that someone saw the event and described the car driven by the perpetrator to the police officer, who testified at trial. The description of the car matched one of the cars driven by appellant. There was also evidence that appellant was tracking Daffern's car and had access to a website showing where her car was at the time of the slashing. In addition, there was evidence that appellant had slashed Daffern's tires before. The previous time, appellant had

26

slashed two tires, which had been easy for Daffern to fix. Three tires were slashed while the car was parked by the movie theater, which required Daffern to call a tow truck. This is some evidence that appellant slashed Daffern's tires.

We hold there is sufficient evidence in the record to support appellant's conviction under the first charged offense of stalking. We overrule appellant's sixth issue.

## C.    Second Charged Offense of Stalking

The portions of the stalking statute relevant to the first charged offense are also the portions relevant to the second charged offense. *See* TEX. PENAL CODE ANN. § 42.072(a). For the second charged offense, the State alleged that the relevant acts took place on or about July 13, 14, and 16, 2010. The specific act that the State alleged appellant committed was following Daffern from place to place.

A little less than a week before July 13, Daffern saw appellant drive past her home. On July 13, Daffern's daughter dropped Daffern off at a gas station to carpool with a friend to work. After Daffern got out of the car, her daughter saw appellant drive by the gas station. The next day, Daffern's daughter saw appellant drive by Daffern's home.

On July 16, appellant drove to her bank early in the morning. She saw appellant's car parked across the street. The car was parked at a drive-through

27

window that was no longer operating. Daffern saw a police car parked at a gas station next to the bank.

Appellant spends a portion of this issue complaining about evidence introduced of other times that he had driven by Daffern's residence. Appellant argues that this evidence, admitted over his objection, was not relevant and only served to inflame the minds of the jury. While this may be true, admissibility of evidence is not relevant to a challenge to the sufficiency of the evidence. *See Wilson*, 7 S.W.3d at 141 (holding "all evidence admitted at trial—including improperly admitted evidence—is considered in a legal sufficiency review"). Moreover, we do not rely on this evidence in performing our review.

Appellant also complains that on two of the instances, Daffern's daughter, not Daffern herself, saw him. We fail to find any significance to this argument. The statute focuses on the acts of the defendants, not on who saw them. *See* TEX. PENAL CODE ANN. § 47.02.

Appellant also argues that the evidence did not show Daffern was afraid of bodily injury or death because at one point Daffern told the police, "I don't care if he knows where I'm at. It is a little weird; but tracking my daughter, that is my fear." The evidence showed, however, that Daffern appeared panicked and emotional when she approached Officer Werner on July 16. Daffern also testified that she was afraid that appellant would try to inflict bodily injury or death upon

her. It was for the jury to resolve this conflict in testimony. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793 (holding an appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution).

Finally, appellant argues that, on July 16, he was not violating the protective order because it had expired. Whether appellant was violating the court's protective order is irrelevant to whether appellant was stalking Daffern. *See* TEX. PENAL CODE ANN. § 47.02.

We hold there is sufficient evidence in the record to support appellant's conviction under the second charged offense of stalking. We overrule appellant's seventh issue.

## Conclusion

We reverse the judgment of the trial court in each cause and remand each for a new trial.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Publish. TEX. R. APP. P. 47.2(b).

29