**Opinion issued February 27, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-11-00464-CR**

**NO. 01-11-00465-CR**

————————————

**DIETER HEINZ WERNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1262894 & 1270826**

**MEMORANDUM OPINION**

Appellant, Dieter Heinz Werner, was charged with stalking in two separate

indictments.[1] Appellant pleaded not guilty. After the jury found appellant guilty

---

[1] *See* TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp. 2013).

on both offenses, the trial court assessed punishment at 10 years' confinement on each offense, to run concurrently. On appeal, appellant argued (1) the trial court erred by denying his motion to have the two indictments severed and tried separately; (2) the trial court erred by denying his motion to suppress statements he made to a police officer; (3) the trial court improperly admitted certain evidence and improperly excluded other evidence; (4) the trial court abused its discretion by denying his request for a jury instruction; (5) the trial court abused its discretion by denying his request to charge the jury on lesser included offenses; (6) the evidence in support of the first indictment was factually insufficient; and (7) the evidence in support of the second indictment was legally and factually insufficient.

On original submission, we overruled appellant's sixth and seventh issues but sustained appellant's first issue. *Werner v. State*, Nos. 01-11-00464-CR, 01-11-00465-CR, 2013 WL 824040, *8, *12–*13 (Tex. App.—Houston [1st Dist.] February 21, 2013, pet. granted). For the first issue, we held that it was error for the trial court to deny appellant's motion to sever the trial for the two offenses. *Id.* at *4. We further determined that we could not hold that the error did not affect appellant's substantial rights. *Id.* at *8. Accordingly, we reversed and remanded for a new trial. *Id.* at *13. We did not reach appellant's second through fifth issues.

2

The Court of Criminal Appeals granted the State's petition for review in each case. *Werner v. State*, 412 S.W.3d 542, 543 (Tex. Crim. App. 2013). The court reversed the portion of our opinion concerning the severance, holding that the error was harmless. *Id.* at 552. It reversed our judgments in each case and has remanded the appeals for us to consider the remaining issues.

We affirm both causes.

## Background

Appellant and the complainant, Donna Daffern, dated for a little more than one year from late 2008 to January 2010. After he broke up with Daffern, appellant continued to text and call her. Many of appellant's texts indicated appellant knew where Daffern or her daughter were at various times of the day.

On one occasion, while en route to the rodeo from work, she received a text from appellant stating, "I think you should go to the rodeo." Daffern knew her friend, Sergeant C. Montemayor, would be at the rodeo. Sergeant Montemayor works for the Harris County Sherriff's department. At the particular time, he was overseeing security at the rodeo as extra employment. Upset, Daffern told Sergeant Montemayor about the text and requested that he search her car for a tracking device. He did so and quickly found one attached to her car. Sergeant Montemayor gave the tracking device to Daffern, recommending that she file a police report.

3

Despite removing the tracking device from her car, Daffern continued to receive texts from appellant demonstrating a knowledge of Daffern's whereabouts. A little more than a month after the first tracking device was found on Daffern's car, Daffern's daughter and a friend returned to the car after watching a movie and found someone had slashed three of the tires on her car. Daffern went to the movie theater, where she told Officer L. Romero, the police officer on the scene, that there was probably another tracking device on the car. She found the second tracker in the same location as the first. Daffern kept the tracking device.

Some time after the second tracking device was found, Daffern went to the police, seeking to bring charges against appellant. She turned the tracking devices over to the police. Detective J. Latham later obtained the devices from the property room and used them to conduct an investigation to determine the owner of the devices. In his investigation, Detective Latham obtained invoices from BrickHouse Security showing that appellant had bought three tracking devices, one of which was purchased the day after Daffern pulled the first tracking device off her car. The invoices also showed appellant paying for a monthly service for a website. The website is maintained by U.S. Fleet. Detective Latham sent a subpoena for documents to U.S. Fleet, but they did not comply. Detective Latham testified at trial that, instead, U.S. Fleet orally provided him with a user name and password associated with the documents he sought to obtain. Detective Latham

4

then printed out the documents relevant to the case. The documents showed the location and speed of what was alleged to be the tracking devices on Daffern's car and times relevant to the first offense of stalking. The documents matched certain locations Daffern testified she was at on certain dates as well as the texts from appellant indicating his knowledge of her whereabouts.

After appellant was charged for the first offense of stalking, a magistrate judge issued a temporary restraining order against appellant, requiring him to stay away from Daffern's home and workplace for 60 days. On the 61st day after the order was issued, Daffern drove to her bank early in the morning. She saw appellant's car parked across the street. The car was parked at a drive-through window that was no longer operating. Daffern saw a police car parked at a gas station next to the bank. Daffern went to the gas station, walked inside, and told the police officer, Officer V. Werner, about seeing appellant's car. Daffern was panicked and emotional when she approached Officer Werner.

Officer Werner drove across the street and approached appellant. When Officer Werner asked appellant why he was there, appellant stated he was waiting for the nearby Home Depot to open. It was already open, however. Next, appellant stated that he was getting gas, even though he was parked across the street from the gas station and had a full tank of gas. Appellant then said he was there to get a cappuccino at the gas station. Finally, appellant asserted that he had

5

pulled into the parking lot to jot down some notes. The notepads appellant had with him were blank.

Appellant admitted to having been arrested before. Believing the magistrate judge's order to still be in effect and believing appellant to be in violation of the order, Officer Werner arrested appellant. After the arrest, Daffern told Officer Werner about the times she and her daughter had recently seen appellant drive past them. Appellant was subsequently charged under a second indictment for stalking.

At trial, the State relied on the testimony of Daffern to authenticate the tracking devices offered into evidence as the ones she found on her car. Daffern said she was not sure, but believed one of them was the first one pulled from her car and the other was the second pulled from her car. She testified that the first device pulled from her car was dirtier than the second one and that the first device had an Allan wrench in it and the second one did not. Appellant objected to the admission of the tracking devices based on improper authentication. The trial court overruled the objection.

The State relied on Detective Latham to authenticate the U.S. Fleet documents. Detective Latham admitted that he was not the custodian of records for U.S. Fleet. The State argued that Detective Latham could authenticate the documents because he was the one who printed them out. Appellant objected to

the admission of the documents based on improper authentication. The trial court overruled the objection.

During the charge conference, appellant requested a jury instruction explaining that the temporary restraining order had expired the day before Officer Werner arrested him for the second offense of stalking. The trial court denied the request. Appellant also requested jury instructions on what he claims are lesser-included offenses of installation of a tracking device, harassment, and criminal mischief. The trial court denied those requests as well.

## Motion to Suppress

In his second issue, appellant argues the trial court abused its discretion by denying his motions to suppress his statements to an officer before his arrest for the second offense of stalking.

## A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State,* 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression

7

hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## B.    Analysis

Appellant argues in his second issue that the police officer lacked probable cause to arrest him for his second offense of stalking. Because the officer lacked probable cause, appellant argues the trial court should have granted his motion to suppress his statements to the officer before his arrest. In order to understand appellant's grounds for asserting error, it is necessary to consider appellant's argument for harm.

Appellant argues that he was harmed by his illegal arrest because (1) it caused the State to file a motion to revoke his bond for the bail set on his first charged offense, (2) "it formed the basis for the State to seek the second

8

indictment" for stalking, and (3) the jury was allowed to hear the officer's testimony concerning appellant's varying explanations for why he was parked at that location.

The first claim of harm is not relevant to a motion to suppress. A motion to suppress is "a specialized objection to the admissibility of evidence." *Porath v. State*, 148 S.W.3d 402, 413 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The appropriateness of the State's seeking to revoke bond before trial has no bearing on the admissibility of evidence at trial relating to appellant's arrest. Accordingly, this cannot be a basis for reversing the trial court's ruling.

For the second claim of harm, the illegal arrest being the basis for the State's seeking the second indictment, it is not the arrest that formed the basis of appellant's second indictment. Appellant's presence near Daffern after having been charged with stalking along with two prior incidents that appellant had driven past Daffern at locations where he would know her to be formed the basis of appellant's second indictment. These events occurred before and independent of appellant's arrest. Arrest is not a prerequisite to being charged with an offense. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 15.02 (Vernon 2005) (establishing requirements for arrest warrant, including naming offense defendant is accused of committing), 15.05 (Vernon 2005) (establishing requirements for complaint).

9

For the final claim of harm, that the jury was allowed to hear the officer's testimony concerning appellant's varying explanations for why he was parked at that location, there could only be error related to this alleged harm if appellant was under arrest at the time he made the statements and the arrest was unlawful. *See State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008) (holding evidence obtained from illegal arrest must be suppressed only when evidence was obtained "by exploitation of that illegality"). It is established that appellant was not formally arrested until after he gave his varying explanations for why he was at that location. Given this basis for harm, then, we conduct an error analysis to determine whether the conduct between appellant and the officer elevated the interaction to the level of an arrest.

Generally speaking, "there are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). For consensual encounters, "[a]n officer is just as free as anyone to stop and question a fellow citizen," and the citizen is free to terminate the encounter at any time. *Id.* An officer does not need reasonable suspicion to request identification and general information such as why the person is at that location. *Id.* at 466, 468.

For investigatory detentions, the officer must have reasonable suspicion in order to detain the person. *Id.* at 466. The officer has reasonable suspicion if he "has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). Such a conclusion is justified when the officer observes "unusual activity." *Id.* "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.* The facts observed do not need to be criminal in nature themselves. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). They just need to lead to a reasonable conclusion that the person is, has been, or soon will be engaged in criminal activity. *Kerwick*, 393 S.W.3d at 273.

Whether an investigatory detention elevates to an arrest depends on the facts and circumstances surrounding the detention. *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991); *Goldberg v. State*, 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). "Whether a person is under arrest or

subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Officer Werner testified at the hearing on the motion to suppress. He testified that, on July 16, 2010, Daffern approached him with a copy of the temporary restraining order entered against appellant. On the very first morning after the restraining order had expired, appellant was parked at a location near Daffern.

Officer Werner approached appellant, who was sitting in his car. Appellant was not doing anything except sitting in his car. He asked appellant what he was doing at that location. Appellant responded that he was waiting for a nearby Home Depot to open. The Home Depot was already open, so Officer Werner again asked him why he was there. Appellant then claimed he was there to get gas, even though he was not parked at the gas station. Officer Werner asked appellant to turn on his car. Appellant complied, and the gauge showed appellant's gas tank to be full. Appellant then claimed he was at the gas station to get a cappuccino. Finally, appellant claimed he was parked there so he could take notes. Appellant had two note pads in his car. Officer Werner asked to see the note pads. Appellant complied, and Officer Werner saw they were blank. Officer Werner then asked

appellant if he had been arrested before. Appellant admitted to being charged with stalking a couple of months earlier, identifying Daffern as the complainant.

Asking appellant why he was at that location does not require reasonable suspicion. *See Castleberry*, 332 S.W.3d at 466. Even presuming that repeatedly asking the question after each response proves doubtful raises the encounter to an investigatory detention, Officer Werner certainly had reasonable suspicion. He knew appellant was parked near Daffern the first morning after the restraining order had expired. Appellant's giving doubtful and inconsistent reasons for being parked at that location added to the "unusual activity" Officer Werner was observing. *See Kerwick*, 393 S.W.3d at 273 (requiring show of unusual activity, connection between detainee and unusual activity, and some indication that unusual activity is related to crime). Appellant argues, "Even though [appellant] was entitled to be there, these different explanations and the officer's statements that he felt Werner was lying to him, could not help but cause the jury to also believe Werner was lying and that [appellant] was stalking Daffern." We agree. Likewise, these same facts also establish that Officer Werner could reasonably reach the same conclusion. *See Jackson v. State*, 745 S.W.2d 4, 9 (Tex. Crim. App. 1988) (holding contradictory and implausible responses to officer's questioning exacerbates officer's suspicions). Accordingly, we hold Officer Werner had reasonable suspicion to conduct an investigatory detention.

13

In contrast, we find no basis for determining that appellant was under arrest in the time he made the relevant statements to the officer. Officer Werner was actively conducting an investigation, the period of questioning did not last long; and Officer Werner did not employ any force or physical restraint during the conversation. *See Mount*, 217 S.W.3d at 724 (holding considerations for determining arrest are length of the detention, amount of force employed, and whether officer actually conducts investigation).

We overrule appellant's second issue.

**Admission of Evidence**

In his third issue, appellant argues the trial court abused its discretion by admitting and excluding certain evidence. Appellant devotes most of this issue to identifying a series of objections he made in the course of the trial. For almost all of the identified objections, however, appellant provides no legal authority for the basis of the objection or why it would have been error for the trial court to overrule the objection. "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to cite to legal authority and to provide accompanying legal analysis results in waiver. *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Accordingly, we will only review the evidentiary objections to which appellant has provided legal authority and analysis, which we identify as

14

objections to (1) the authentication of the tracking devices, including proof of their chain of custody, and (2) the authentication of documents pertaining to the tracking devices.

## A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if some evidence supports its decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B.    Analysis

Appellant raises two complaints about the admissibility of the physical tracking devices admitted at trial, arguing the evidence is insufficient to establish that they were the devices pulled off of Daffern's car. He also raises a complaint about certain documents relating to the tracking devices that were admitted at trial. The documents purportedly came from a company called U.S. Fleet. They were print outs of a website identifying the location and traveling speed of a tracking

device over a period of time. Appellant argues that the U.S. Fleet documents were not properly authenticated. We do not need to reach whether it was error for the trial court to have admitted the tracking devices and the records from U.S. Fleet because we hold that any error in the erroneous admission of the devices and records is harmless.

Whether the error requires reversal is controlled by rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b) (requiring any nonconstitutional error that does not affect substantial rights to be disregarded); *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding error in admission of evidence is nonconstitutional error). Accordingly, we must determine whether the error affected a substantial right of appellant's. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

Appellate courts should not overturn a criminal conviction for nonconstitutional error if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In assessing whether the error had a substantial and injurious effect on the jury's verdict, the

16

court of appeals must consider the entire record, including overwhelming evidence of guilt, whether the State emphasized the error, defensive theories, jury instructions, and closing arguments. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

Both the tracking devices and the records from U.S. Fleet relate to the first offense of stalking. As contained in the indictment and reflected in the jury charge, the State alleged that appellant

> on or about March 11, 2010 and April 3, 2010 through April 15, 2010, did then and there unlawfully, and pursuant to the same scheme and course of conduct directed specifically at [the Complainant], did knowingly engage in conduct that the defendant knew and reasonably believed that the Complainant would regard as threatening the infliction of bodily injury and death upon the Complainant, namely, by tracking the Complainant's vehicle with one or more tracking devices, sending the complainant messages on the Complainant's phone, and damaging the complainant's tires; and said conduct would cause a reasonable person to fear and did cause the Complainant to be in fear of, the infliction of bodily injury or death upon the Complainant.

*See* TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp. 2013).

The focus on the statute for stalking, as it relates to appellant, is placing the complainant in fear of infliction of bodily injury or death. *See id.* In this case, part of the State's basis for establishing fear of infliction of bodily injury or death was proving that appellant was tracking Dafffern's vehicle with a tracking device. Daffern testified that appellant demonstrated a knowledge of her whereabouts that could not be achieved by simply knowing Daffern's general routine and interests.

17

Appellant sent Daffern numerous texts demonstrating that he knew her exact whereabouts at specific times, even when Daffern was going places that were not part of her regular routine. Daffern testified that she found a tracking device on her car, removed it, and later found another one in the same place on her car. Records from BrickHouse Security show that appellant purchased three tracking devices and that one of the purchases was purchased the day after Daffern pulled the first tracking device off of her car.

All of this evidence firmly establishes that appellant was tracking Daffern's car. It is from this evidence that the jury could determine that appellant was knowingly engaging in conduct that he knew and reasonably believed that Daffern would regard as threatening the infliction of bodily injury and death upon her. *See id.* The physical tracking devices and records purporting to show the location of the tracking devices over the relevant times bolster the claim that appellant was tracking Daffern; however, they do little themselves to further establish that appellant was engaging in conduct to place Daffern in fear of harm.

Considering the remainder of the record does not suggest that appellant's substantial rights were affected. Much of the evidence relating to the first charge of stalking came from Daffern explaining her dating relationship with appellant; the subsequent texts, letters, and calls; her discovery of the tracking devices; and the fear appellant's actions placed in her. There was also the testimony of Sergeant

18

Montemayor, who found the first tracking devices on Daffern's car, and Officer Romero, who responded to the call about Daffern's slashed tires. None of these officers' testimony was predicated on the admissibility of the tracking devices or the U.S. Fleet records.

Other than Daffern's brief testimony concerning identifying the tracking devices, the only testimony based on the admitted tracking devices and U.S. Fleet records came from Detective Latham. His testimony concerned the investigation he did concerning the tracking devices, the U.S. Fleet records, the BrickHouse Security records, and the text messages on Daffern's phone.

The State did not emphasize the physical tracking devices and the U.S. Fleet records in its voir dire, opening statements, or closing statements. In fact, the U.S. Fleet records were not mentioned at all at any of these points.

After examining the record as a whole, we hold that any error concerning the admission of the physical tracking devices and the U.S. Fleet records has not affected appellant's substantial rights. *See Morales*, 32 S.W.3d at 867. We overrule appellant's third issue.

**Jury Instruction**

In his fourth issue, appellant argues he was entitled to a jury instruction on the expiration of the temporary protective order.

## A.  Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge.  *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).  If we find error, we then determine whether it harmed the appellant.  *Ngo*, 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial.  *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).  If appellant did not make a proper objection at trial, appellant "will obtain a reversal only if the error is so egregious and created such harm that he has not had a fair and impartial trial."  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  If appellant made a proper objection, the error must be reversed "as long as the error is not harmless."  *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 171).

We do not review a trial court's ruling on a request for a defensive instruction with the usual deference.  Instead, "we view the evidence in the light most favorable to the defendant's requested submission."  *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

**B.     Analysis**

Appellant argues that he was entitled to a defensive instruction explaining that the temporary restraining order had expired the day before Officer Werner arrested him for the second offense of stalking.  As the State acknowledges, if there is a fact issue regarding the legality of a defendant's detention or subsequent arrest, the defendant is entitled to a jury instruction on the matter.  *Holmes v. State*, 248 S.W.3d 194, 199–200 (Tex. Crim. App. 2008) (citing TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005)).  Article 38.23 of the Texas Code of Criminal Procedure provides,

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).  As the State points out, however, such an instruction was included in the charge.  The jury charge instructed, "If you believe or have a reasonable doubt that the evidence was obtained in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, then in such event, you shall disregard such evidence so obtained."

Appellant's complaint on appeal is that the trial court erred by denying a further instruction, explaining that the temporary restraining order had expired.

When a requested instruction recites specific facts and calls attention to a specific piece of evidence, the instruction constitutes a comment on the weight of the evidence. *Mendoza v. State*, 88 S.W.3d 236, 240 (Tex. Crim. App. 2002). Comments on the weight of the evidence are not permissible. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *Mendoza*, 88 S.W.3d at 240 n.5 (citing article 36.14).

We overrule appellant's fourth issue.

## Lesser-Included Offenses

In his fifth issue, appellant argues he was entitled to a jury instruction on what he claims are lesser-included offenses of installation of a tracking device, harassment, and criminal mischief.

### A.      Standard of Review

A defendant is entitled to an instruction on an offense if (1) the offense is a lesser-included offense of the charged offense and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006).

The analysis of the first requirement is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Under prong one, to be considered a lesser-included offense, the offense must be included within the proof necessary to

22

establish the offense charged. *Campbell v. State*, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004).

If the first prong is satisfied, we then determine, in prong two, if there is some evidence in the record from which a jury could rationally find that, if the defendant is guilty, he is guilty only of the lesser offense. *See id.* An instruction on a lesser-included offense is not required solely because "the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We consider all evidence presented at trial in determining whether an instruction on a lesser-included offense would have been warranted. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). If both of the prongs are met, the defendant is entitled to a charge on the lesser-included offense. *Guzman*, 188 S.W.3d at 189.

**B.    Analysis**

Appellant was charged with stalking. As it pertains to him, the State was required to establish that appellant

(a)    . . . on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1)    . . . the actor knows or reasonably should know the other person will regard as threatening:

(A) bodily injury or death for the other person.

TEX. PENAL CODE ANN. § 42.072(a)(1)(A).

Article 37.09 of the Code of Criminal Procedure provides,

An offense is a lesser included offense if:

(1)    it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2)    it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3)    it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4)    it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006).

The first offense appellant claims is a lesser-included offense is unlawful installation of a tracking device. The pertinent statute provides, "A person commits an offense if the person knowingly installs an electronic or mechanical tracking device on a motor vehicle owned or leased by another person." TEX. PENAL CODE ANN. § 16.06(b) (Vernon 2011). The offense is a Class A misdemeanor. *Id.* § 16.06(c).

Unlawful installation of a tracking device does not satisfy any of the definitions of a lesser-included offense for stalking. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09. Appellant argues the installation of the tracking device is

included within the proof necessary to establish the first stalking offense.  We find no support for this.  While the State relied on the installation of the tracking device to establish stalking, we are concerned about whether the elements for unlawful installation of a tracking device are included with the elements for stalking, not whether the facts relied on by the State would also meet the elements for a separate offense.  *See Jacob v. State*, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995) (holding "facts required" under first definition of lesser-included offense means evidence legally required to prove elements, not evidence actually presented by State in individual case).  The actual elements of stalking as charged in the indictment and the actual elements of unlawful installation of a tracking device have almost no overlap.  Accordingly, unlawful installation of a tracking device is not a lesser-included offense of stalking.

The same is true for appellant's claim that criminal mischief if a lesser-included offense of stalking.  As it pertains to appellant's argument, a person commits criminal mischief if, "without the effective consent of the owner . . . he intentionally or knowingly damages or destroys the tangible property of the owner."  TEX. PENAL CODE ANN. § 28.03(a)(1) (Vernon 2011).  The amount of the pecuniary loss sets the level of the offense.  *Id.* § 28.03(b).  Appellant argues that criminal mischief is a lesser-included offense because the State alleged as a basis for establishing stalking that appellant slashed Daffern's tires.  This is not the

25

relevant inquiry. *See Jacob*, 892 S.W.2d at 908. Because criminal mischief requires proof of a pecuniary loss and stalking does not, criminal mischief is not a lesser-included offense of stalking. *See Prejean v. State*, 704 S.W.2d 119, 123 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (holding criminal mischief is not a lesser-included offense of arson because criminal mischief requires showing of amount of pecuniary loss).

The final offense appellant claims is a lesser-included offense is harassment. Appellant argues that the jury could have found him not guilty of stalking but guilty of harassment under both charged offenses by determining "that he did not act pursuant to 'the same scheme or course of conduct,' or that he did so without the requisite mental intent to cause Daffern fear of bodily injury or death." Appellant provides no explanation for this argument, however. It is not enough to claim a jury could have disbelieved some evidence in order to be entitled to a lesser-included instruction. *Hampton*, 109 S.W.3d at 441. Instead, "there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider." *Id.* Appellant has failed to establish what evidence the jury could have relied on to conclude that appellant was not acting in the same scheme or course of conduct or that he was not acting with the requisite intent for stalking. *See* TEX. R. APP. P. 38.1(i) (requiring appellant to provide concise argument for contentions made with appropriate citations to authorities and record).

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court for both appellate causes.

                                        Laura Carter Higley
                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.  TEX. R. APP. P. 47.2(b).