Cedrick T. JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00084–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 1, 2007.

Discretionary Review Refused
June 20, 2007.

Angela L. Cameron, Houston, TX, for Appellant.

Lori Deangelo Fix, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for State of Texas.

Panel consists of Justices TAFT, ALCALA, and HANKS.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Cedrick T. Johnson, of aggravated sexual assault and assessed his punishment at 25 years in prison. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(A)(i), (2)(A)(iii) (Vernon Supp.2006). We determine (1) whether the trial court erred in refusing the definition of consent that appellant requested be included in the jury charge and (2) whether the evidence was factually sufficient to show that the complainant did not consent to sexual intercourse with appellant. We affirm.

## Facts

The State presented evidence that appellant forced the complainant, Liliana Ponce, into his car at gunpoint, drove to a remote area, and raped her under threat of death. He then drove her to a Randall's grocery store, where he eventually left her in the car while he entered the store in an attempt to withdraw money from Ponce's bank account. When appellant entered the store, Ponce ran to a nearby business and told the manager what had happened. The manager called the police, who arrived shortly thereafter. Appellant was found about a week later and arrested for aggravated sexual assault.

In contrast, appellant claimed that he and Ponce had dated in the past, that they had had sexual relations before, that she had consented to sexual relations on the day in question, that he had driven her to the Randall's store to withdraw money from his own account for her, and that she had made up the rape story because she was angry at him for refusing to leave his wife.

## Definition of Consent in the Jury Charge

In his second point of error, appellant argues that the trial court erred in refusing the definition of consent that he requested be included in the jury charge.[1]

---

1. We discuss appellant's second point of error first because, if appellant were correct that the trial court should have used the definition of consent that he requested, rather than the one that the court gave, then we would have to measure the sufficiency of the evidence (a challenge raised in appellant's first point of error) against appellant's proposed definition of consent, as the hypothetically correct charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997) ("Hence, [legal] sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."); *McKinney v. State,* 177 S.W.3d 186, 197 n. 8 (Tex.App.-Houston [1st Dist.] 2005) (applying *Malik* to factual-sufficiency challenge), *aff'd on other grounds,* 207 S.W.3d 366 (Tex.Crim.App. 2006).

## A. Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If we find error, we then determine whether it harmed the appellant. *Id.* The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). When a timely objection is made at trial, an appellate court will search only for "some harm." *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

## B. The Law

As appellant was indicted and charged here, the State had to prove that appellant intentionally or knowingly caused the penetration of the sexual organ of Ponce with his sexual organ and without her consent and that, by his acts or words occurring in Ponce's presence, he threatened to cause her death. *See* Tex. Pen.Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(iii). Specifically, under the indictment and charge in this case, in order to prove that the intercourse occurred without Ponce's consent, the State had to show that appellant compelled Ponce to submit or to participate by threatening to use force or violence against her and that she believed that appellant had the present ability to execute the threat. *See id.* § 22.011(b)(2) (Vernon Supp.2006).

## C. Discussion

Appellant requested that the trial court instruct the jury with the definition of consent found in the "General Provi-

sions" chapter of the "Introductory Provisions" title of the Texas Penal Code, specifically, Penal Code section 1.07(11).[2] *See* Tex. Pen.Code Ann. § 1.07(a)(11) (Vernon Supp.2006). Texas Penal Code section 1.07(a)(11) provides: "In this code: ... '[c]onsent' means assent in fact, whether express or apparent." *Id.* The trial court denied appellant's requested instruction, instead instructing the jury as follows:

> An aggravated sexual assault is without the consent of the other person if the defendant compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the defendant has the present ability to execute the threat.

This definition was also incorporated into the charge's application paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of August, 2004, in Harris County, Texas, the defendant, Cedrick T. Johnson, did then and there unlawfully, intentionally or knowingly cause the penetration of the female sexual organ of Liliana Ponce, by placing his sexual organ in the female sexual organ of Liliana Ponce, without the consent of Liliana Ponce, namely, *the defendant compelled Liliana Ponce to submit or participate by threatening to use force or violence against Liliana Ponce, and Liliana Ponce believed that the defendant had the present ability to execute the threat,* and by acts or words occurring in the presence of Liliana Ponce, the defendant threatened to cause the death of Liliana Ponce, then

2. Actually, appellant requested two instructions: the definition of consent found in Texas Penal Code section 1.07(a)(11), and a defensive charge under Texas Penal Code section 22.06(1), entitled "Consent as a Defense to Assaultive Conduct." *See* Tex. Pen.Code Ann. §§ 1.07(a)(11), 22.06 (Vernon 2003 & Supp. 2006). On appeal, appellant does not pursue the denial of his requested defensive charge under section 22.06.

you will find the defendant guilty as charged in the indictment.

(Emphasis added.) The definition that the trial court gave came directly from subsection (b)(7) of Texas Penal Code section 22.011—the statute establishing the offense of sexual assault—which definition is incorporated by reference into the statute establishing the offense of aggravated sexual assault. *See id.* § 22.021(c) (Vernon Supp.2006) ("An aggravated sexual assault under this section is without the consent of the other person if the aggravated sexual assault occurs under the same circumstances listed in Section 22.011(b).").

■ Generally speaking, a more specific statutory definition controls over a more general one, if the two definitions have a similar purpose and cannot be reconciled. *Cf., e.g., Segura v. State,* 100 S.W.3d 652, 654 (Tex.App.-Dallas 2003, no pet.) ("Under the *in pari materia* principle of statutory construction, two statutes with similarity of purpose must be harmonized if possible. The specific controls over the general if the two cannot be harmonized and there is no indication that the legislature intended to make the general act controlling."); *State v. Magee,* 29 S.W.3d 639, 640 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (citing, among other authority, Tex. Gov't Code Ann. § 311.026(a), (b) (Vernon 2005) (codifying instance of doctrine of *in pari materia* )). The definitions of consent that are more specific to the offense of aggravated sexual assault are those found in Texas Penal Code section 22.011(b), which is incorporated by reference into the aggravated-sexual-assault statute. In contrast, section 1.07(a)(11)'s definition of consent is not specific to any offense. Additionally, the definition of consent contained in section 1.07(a)(11) conflicts with the definition contained in section 22.011(b)(7) in the sense that the former is broader and less specific

than the latter and could thus allow for conviction upon a wider range of facts. *See Elliott v. State,* 858 S.W.2d 478, 480 n. 1 (Tex.Crim.App.1993) (in dictum, describing definition of consent contained in predecessor to section 1.07(a)(11) as "broader" than definition contained in section 22.011(b)). *Compare* Tex. Pen.Code Ann. § 1.07(a)(11) (" 'Consent' means assent in fact, whether express or apparent.") *with id.* § 22.011(b)(7) ("A sexual assault ... is without the consent of the other person if: ... the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat. . . ."). Applying the above rule of statutory construction, we hold that the trial court did not err in giving the more specific definition of consent found in section 22.011(b)(7), as alleged in the indictment here, and in rejecting the more general definition that appellant requested.

In *Pleasant v. State,* an unpublished opinion in an appeal from an aggravated-sexual-assault conviction, this Court rejected an almost identical challenge that section 1.07's definition of consent controlled over a definition contained in section 22.011(b):

> In point of error two of appellant's appeal of the sexual assault conviction, appellant asserts the trial court erred by refusing to place in the jury charge his written requested definition of "consent": " 'Consent' means assent in fact, whether express or apparent." [former] Tex. Pen.Code Ann. § 1.07(a)(9) [now section 1.07(a)(11)]. . . .
>
> Instead the court instructed the jury, tracking the language of Tex. Pen.Code Ann. § 22.011(b)(1)(2)[sic] . . . :
>
>> An aggravated sexual assault is without the consent of the other person if the defendant compels the other per-

son to submit or participate by threatening to use force or violence against the other person, and the other person believes that the defendant has the present ability to execute the threat.

. . .

Appellant was charged with aggravated sexual assault pursuant to TEX. PENAL CODE ANN. § 22.021(a)(1) and (2)(A)(ii) and (iv).... *The sexual assault section of the penal code carries its own specific definitions of what is meant by "without the consent of the other person," and those definitions are embodied in § 22.011(b). The language that was used in the court's charge came from § 22.011(b). The general rule is that a specific statute controls over a general statute.*

*Id.,* No. 01–90–00878–CV, 1992 WL 79686, at *2 (Tex.App.-Houston [1st Dist.] Apr. 23, 1992, pet. ref'd) (not designated for publication; emphasis added). We now expressly adopt the holding of the *Pleasant* Court.

To support his position, appellant relies on two opinions, which we distinguish. In *Elliott v. State,* the defendant was convicted of the offense of capital murder committed in the course of committing aggravated sexual assault. *See id.,* 858 S.W.2d at 480. The jury charge defined lack of consent in terms of the definition contained in Texas Penal Code section 22.011(b)(3). *See id.* In *dictum* in a footnote, the Court of Criminal Appeals observed:

At the time of the offense, § 22.021 defined the offense of aggravated sexual assault without any reference whatsoever to § 22.011. Accordingly, it is thus debatable whether, in the instant cause, the meaning of "without consent" contained in the aggravated sexual assault statute was, at the time of appellant's

trial, necessarily limited to the "exclusive" definitions contained in subsection (b) of the simple sexual assault statute [section 22.011(b)].... However, effective September, 1, 1987 § 22.021 was amended to [incorporate section 22.011(b)'s definitions of "without consent"].... Presumably, at the time of trial, the State could have obtained a conviction upon the broader definition of "without consent" that can be derived from TEX. PENAL CODE ANN. § 1.07(a)(9): without "assent in fact, whether express or apparent." Nevertheless, because the State failed to object to the court's charge, we are constrained to measure sufficiency of the evidence according to the only definition that was submitted.

*Id.* at 480 n. 1. It is based on this reasoning that the *Elliott* court later concluded that the State had to show not only lack of express or apparent assent in fact (section 1.07(a)(11)), but also the specific facts required under section 22.011(b) to show lack of consent: that is, the State had to prove the more specific definition and could not rely exclusively on having proved the broader definition. *See id.* at 484. In contrast to the situation in *Elliott,* here, at the time of appellant's offense, the aggravated-sexual-assault statute expressly incorporated section 22.011(b)'s definitions of "without consent." The dictum in *Elliott* concerning what instruction the State might have requested for an offense committed before the aggravated-sexual-assault statute incorporated section 22.011(b)'s definitions thus does not apply to this case. Moreover, the cited dictum in *Elliott* implies that the only reason that the State might have been allowed to obtain a broader definition based on section 1.07(a) is that the aggravated-sexual-assault statute did not contain its own definition of "without consent"; now that the aggravated-sexual-assault statute contains

its own definition, the dictum in *Elliott* implies that more specific definition applies, which definition supports our conclusion.

Appellant also relies on language in *Contreras v. State*, No. 05–05–00570–CR, 2005 WL 3528782 (Tex.App.-Dallas Dec.27, 2005, no pet.) (not designated for publication). In discussing the sufficiency of the evidence showing lack of consent—an appellate challenge different from appellant's challenge here—the *Contreras* court cited both the definition of consent under section 1.07(a)(11) and certain definitions of "without consent" under section 22.011(b). *See id.* at *4. However, the *Contreras* court was not considering the issue presented by appellant in the instant appeal. Furthermore, later in the same opinion, when discussing whether any evidence supported the submission of a jury instruction on one of three theories of lack of consent found in section 22.011(b), the *Contreras* court stated, "Section 22.011(b) of the Texas Penal Code provides the statutory definitions establishing when a sexual assault is without consent." *Id.* at *8. This statement supports our conclusion, not appellant's assertion.

Because no error occurred, we need not determine whether appellant was harmed. *See Ngo,* 175 S.W.3d at 743.

We overrule appellant's second point of error.

### Factual Sufficiency

In his first point of error, appellant argues that the evidence was factually insufficient to show that he had intercourse with Ponce without her consent.

### A. Standard of Review

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson,* "[we] cannot conclude that a conviction is 'clearly wrong' or 'manifestly unjust' simply because, on the quantum of evidence admitted, [we] would have voted to acquit had [we] been on the jury." *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

"We may not re-weigh the evidence and substitute our judgment for that of the [fact-finder]." *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *Cain,* 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n. 5.

### B. Discussion

■ As noted above, under the charge given here, in order to prove that the

sexual intercourse occurred without Ponce's consent, the State had to show that appellant compelled Ponce to submit or to participate by threatening to use force or violence against her and that she believed that appellant had the present ability to execute the threat. *See* TEX. PEN.CODE ANN. § 22.011(b)(2). The State presented the following evidence to carry this burden. According to Ponce, she did not know appellant before the assault. Appellant abducted her at gunpoint,[3] pointed the gun at her at all times, threatened to kill her, drove her to a remote location, forced her to have anal and vaginal sex while bent face down over the trunk of his car, and drove her to a Randall's store in order to take money from her account, at which point she escaped. Ponce thought that appellant was going to kill her. When the investigating officer met with Ponce shortly after her escape, she was crying, "had a hard time talking," and appeared "very, very scared," "real [sic] emotional," and "embarrassed." Ponce was also "shaken up" and "afraid to talk" about the incident even a week later, when the police took her statement. Although Ponce's rape-kit examination did not reveal injury or trauma to her vagina or anus, the sexual-assault nurse examiner who performed the rape-kit examination opined that this is not an unusual or unheard-of result in sexual-assault cases. Additionally, semen was collected during vaginal and anal swabs of Ponce, which fact contradicts appellant's claim at trial that he withdrew before ejaculation and that he did not have anal intercourse with Ponce. The DNA profile of the semen collected from the vaginal and anal swabs of Ponce matched appellant's DNA profile.

Although there were no visible injuries on Ponce, the investigating officer testified that, in his experience, the lack of physical injury does not necessarily mean that no sexual assault occurred, and Ponce testified that appellant had not hit her. Although Ponce did not tell her fiancé that she had been raped, she explained that she had not done so because she was "ashamed." When appellant was eventually stopped in the car that had been in the assault on Ponce, he had in his car the BB gun that Ponce identified at trial as having been used by appellant during the assault.

In support of his factual-sufficiency challenge, appellant relies on the following evidence. Appellant testified that he and Ponce had dated before, that she consensually entered his car, that she suggested the remote location to which they drove, that she consented to have intercourse with him, that he never pointed a gun at or threatened her at any time, that he drove her to Randall's in order to withdraw money for her, that they had had consensual intercourse on more than one occasion, and that Ponce had accused him of rape because she was angry at appellant for his refusing to leave his wife. The investigating officer opined that it would be difficult, though not impossible, to abduct someone at gunpoint from the public area from which Ponce had said that appellant had abducted her. The investigating officer also did not see any injuries on Ponce, and, during the rape-kit examination, no trauma was found to her vagina or anus. Ponce did not tell her fiancé that she had been raped, even though he picked her up from the hospital after the incident.[4]

---

**3.** The gun that Ponce identified at trial as the one that appellant used was actually a "BB" gun, but Ponce testified that she had not known that it was not a real gun at the time of the sexual assault. Also, one of the investi-

gating officers testified that a layperson viewing the BB gun "would believe it was a gun."

**4.** In his brief, appellant states that Ponce "told *no one* she was raped" (emphasis add-

Ponce described her attacker and his vehicle to the police only generally, yet she was able positively to identify appellant in a police line-up only a week later. Additionally, Ponce could not tell the officers the exact location of the street on which the attack occurred. Semen from two men was found on Ponce's underpants. Furthermore, although Ponce testified that she had left her purse and papers with her address and identity in appellant's car after the assault, the State presented no evidence that appellant had used that information afterwards. Finally, after he had been identified as a suspect, appellant generally cooperated and was arrested without incident.

Appellant argues both that the State's evidence was weak and contradictory and that his own version of events was more credible than Ponce's. Appellant's arguments are based on credibility determinations and on considerations of what weight to give certain evidence, which matters the jury was entitled to resolve as it chose. *See King,* 29 S.W.3d at 562; *Cain,* 958 S.W.2d at 407 n. 5, 408–09. We hold that the State's evidence was not so weak as to render the verdict clearly wrong or manifestly unjust and that the verdict was also not against the great weight and preponderance of the evidence. We thus hold that the evidence was factually sufficient to support the verdict.

We overrule appellant's first point of error.

### Conclusion

We affirm the judgment of the trial court.

ed), but the record does not support this assertion.