**Opinion issued April 18, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-12-00548-CR

———————————————

## ALFREDO ERNESTO HERRERA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1235094**

---

**MEMORANDUM OPINION**

Appellant, Alfredo Ernesto Herrera, was charged by indictment with murder.[1]   He pleaded not guilty.   The jury found him guilty and assessed

---

[1]   *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2011).

punishment at 25 years' confinement.  In three issues, appellant argues the trial court abused its discretion by (1) denying his requests for jury instructions and (2) denying his motion for new trial without holding a hearing.

We affirm.

## Background

On September 27, 2009, Michael De Los Santos was shot in the head with a shotgun while inside a club in Houston, Texas called La Bola Loca.  He died several days later in the hospital.  The cause of death was determined to be complications from a shotgun wound to the head with penetration of the brain.  Appellant was identified as a suspect, arrested, and charged with murder.

The State presented evidence that appellant had been in a fight inside the club earlier in the night and had been escorted out of the club.[2]  Appellant went to his truck in the parking lot and retrieved a shotgun.  He walked back to the club, opened the door, and fired at least one shot, hitting De Los Santos.  A manager for the club was outside, came up behind appellant, and hit appellant on the back of the head with the handle of his pistol.  Appellant retreated into the parking lot and eventually reached his car as the manager fired shots at appellant.  Appellant fired

---

[2]     The evidence supporting the conviction is not challenged on appeal.  Accordingly, the State's evidence is generally summarized for purposes of this appeal.  Conflicts in different witnesses' accounts are not addressed.

2

at least one more shot before getting into his truck. At least one more person also got into appellant's truck, and they drove away.

T. Ware, an arson investigator for the Houston Fire Department was performing surveillance in the area of the club when he heard shots and saw the truck leave the parking lot. Ware activated his flashing red lights and began pursuing the truck. During the pursuit, he saw a gun thrown from the passenger side of the truck. He drove over the gun in his pursuit. The truck pulled ahead and turned near a highway. When he turned the corner, Ware saw the truck in the roadway with the doors open. He also saw two Hispanic males running away into a nearby bayou.

Appellant testified on his own behalf. He testified that he went to the club that night with his uncle and cousin. His uncle bought a bucket of beers and they each took one. Almost immediately after that, appellant turned around and saw his uncle in a fight near the front of the club. As he approached, he saw 10 to 15 men also approaching, looking aggressive. He saw one of the men pull something shiny from his pocket, which appellant believed was a knife. Concerned for his uncle's safety, appellant rushed to his truck and grabbed his shotgun.

Appellant headed back to the club. He explained to the jury that he had no intention of firing the shotgun. Instead, he planned to waive the gun around to scare away the group that had been approaching his uncle. He opened the door to

3

the club and began waiving the gun.  Two seconds later, appellant felt a hard blow to the back of his head.  Stunned, he stumbled backwards and fell off of the curb of the sidewalk next to a car in the parking lot.  As he fell, appellant accidentally fired the gun.

The person who hit him in the back of the head began firing shots at him. Appellant ran to his truck, threw the shotgun onto the floorboard, and began to start the car.  His uncle and cousin reached the truck.  His cousin grabbed the shotgun and fired it at the club.  They all got into the truck, and appellant drove away.  They saw the emergency lights on a car following them.  Appellant's uncle wiped down the gun and threw it out of the truck.  Later, the truck wrecked, and they fled on foot.

On the day of the jury charge conference, appellant requested instructions to the jury on voluntary act, mistake of fact, on self defense, defense of third person, and threat as justifiable force.  At the charge conference, appellant's counsel requested instructions on mistake of fact, defense of third person, and threat as justifiable force.  The trial court denied the requests.

Almost a month after the trial, appellant filed a motion for new trial.  In it, he requested a new trial based on newly discovered evidence.  Appellant explained that, after the night of the shooting, his cousin had fled to Mexico, "upon learning that people were looking to kill him."  Following appellant's conviction, the cousin

4

talked with appellant's stepfather, Mauro Lopez, over the telephone. Josefa Castillo was in the room with the cousin during the telephone conversation. Both Lopez and Castillo provided affidavits about the conversation, which appellant attached to his motion. Castillo's affidavit is in Spanish, however, without any English translation.

According to Lopez's affidavit, the cousin explained that when he was at the club with appellant and their uncle, appellant told him that their uncle was in trouble. They both left the club and the cousin saw appellant go to the truck and walk back with a shotgun. When appellant reached the door of the club, the cousin saw a man come up behind appellant and hit him on the head several times with a pistol. The man then shot towards appellant, apparently missing him despite being at point blank range, and towards the club. Appellant fell back into the parking lot. His shotgun went off and hit the parked car next to him. The cousin ran to appellant and helped him up. They both ran to the truck. The cousin held the gun as they ran to the truck. When they reached the truck, the cousin fired one shot into the air. They got into the truck with their uncle and drove away.

Appellant requested a hearing on his motion for new trial. The trial denied the motion without a hearing.

**Jury Instructions**

In his first issue, appellant argues the trial court abused its discretion by denying his requests for instructions on defense of third person and threat as justifiable force. In his second issue, appellant argues the trial court abused its discretion by denying his request for an instruction on mistake of fact.

## A. Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the appellant. *Ngo*, 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If appellant did not make a proper objection at trial, appellant "will obtain a reversal only if the error was so egregious and created such harm that he has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If appellant made a proper objection, the error must be reversed "as long as the error is not harmless." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 171).

We do not review a trial court's ruling on a request for a defensive instruction with the usual deference. Instead, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

## B.    Analysis

"It is well settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). When a defensive theory is raised by the evidence from any source, the theory must be submitted to the jury. *Reynolds v. State*, 371 S.W.3d 511, 521 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997)).

Appellant argues for his first issue that his "defense was that he was using non-deadly force in defense of a third person by brandishing a deadly weapon[] and that[,] in the course of doing that, Appellant unintentionally fired the gun one time after being pistol-whipped." Appellant argues that, without instructions on defense of a third person and threat as justifiable force, the jury "would have had no guidance for considering that Appellant have been acting within the law when

7

he brought the shotgun to the nightclub and brandished it under the circumstances."

Section 9.33 of the Texas Penal Code provides, "A person is justified in using force or deadly force against another to protect a third person if:

> (1)    under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect;  and

> (2)    the actor reasonably believes that his intervention is immediately necessary to protect the third person.

TEX. PENAL CODE ANN. § 9.32 (Vernon 2011).

With respect to threat as justifiable force, section 9.04 of the Texas Penal Code provides,

> The threat of force is justified when the use of force is justified by this chapter.  For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

*Id.* § 9.04 (Vernon 2011).

Both of these defenses are justification defenses, also known as confession-and-avoidance defenses.  *See id.* §§ 9.04 (providing "[t]he threat of force is *justified* when . . ." (emphasis added)), 9.33 (providing "[a] person is *justified* in using force or deadly force . . ." (emphasis added)); *Rodriguez v. State*, 368 S.W.3d

8

821, 824 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (discussing function of justification defenses). For justification defenses, "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

A person commits the offense of murder "if he intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011). Appellant did not admit to this at trial, however. The defensive evidence consisted of essentially his testimony and Castillo's testimony. Castillo only testified that appellant's cousin had fled to Mexico shortly after the shooting. Appellant testified that he opened the door to the club, brandishing but not shooting the shotgun. He then was hit in the back of the head, stumbled backwards, fell off the curb, and accidentally discharged the shotgun as a result of the fall.

Instead of admitting to every element of the offense including the culpable mental state, appellant's defensive evidence establishes that the discharge of the weapon was only by accident and that he never had any intent other than to wave the shotgun around. A defendant is not entitled to an instruction on a defensive theory that "merely negates an element in the State's case, rather than

9

independently justifying or excusing the conduct." *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007).

We hold that, because his defensive evidence did not essentially admit to every element of the offense of murder, appellant was not entitled to jury instructions on justification defenses. We overrule appellant's first issue.

In his second issue, appellant argues the trial court abused its discretion by denying his request for an instruction on mistake of fact. Specifically, he argues that there was conflicting evidence on whether his uncle was in immediate danger that night. The only relevance that appellant argues this has, however, concerns whether appellant was justified in believing his uncle needed defending that night. In other words, this instruction concerns whether appellant could assert defense of third person. *See* TEX. PENAL CODE ANN. § 9.33.

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (Vernon 2011). "A mistake about the existence of a fact which would establish an affirmative defense to an offense, rather than negating an element of the offense, does not raise the mistake of fact defense." *Lugo v. State*, 923 S.W.2d 598, 601 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

We overrule appellant's second issue.

10

**Hearing on Motion for New Trial**

In his third issue, appellant argues that the trial court abused its discretion by not holding a hearing on his motion for new trial.

## A. Standard of Review & Applicable Law

A defendant does not have an absolute right to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Instead, he is entitled to a hearing when he (1) raises matters which are not determinable from the record and (2) establishes reasonable grounds showing that he could potentially be entitled to relief. *Id.*

We review the trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion when the ruling "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* "Our review . . . is limited to the trial [court]'s determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Id.*

## B. Analysis

"A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (Vernon 2006).

Under that statute, a defendant is entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).

A trial court does not abuse its discretion when the prosecution's case was strong enough that the new evidence suggested by the affidavits, even if true, would not be compelling enough to probably bring about a different result in a new trial. *Id.* In this case, the affidavits indicate that appellant's cousin stated that neither he nor appellant fired at the club, let alone in the club. Appellant shot a car next to the club and his cousin shot into the air in the parking lot. According to the cousin, the only person to fire into the club was someone with a pistol. Yet, the uncontroverted physical evidence establishes that the complainant died of a shotgun wound to the head at relatively close proximity. Under appellant's cousin's theory of events, this outcome was impossible. Accordingly, we hold that appellant's motion for new trial did not establish "reasonable grounds showing that he could potentially be entitled to relief." *Hobbs*, 298 S.W.3d at 199.

We overrule appellant's third issue.

12

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   Tex. R. App. P. 47.2(b).