

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00047-CR

MASON DALE-RAY MUNOZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Wilbarger County, Texas,
Trial Court No. 12,579, Honorable Dan Mike Bird, Presiding

February 21, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Mason Dale-Ray Munoz, was convicted following a jury trial of two counts of aggravated sexual assault. He was sentenced to ninety-nine years of confinement on each count, with the sentences to be served consecutively.[1] On appeal, he asserts the trial court erred by denying (1) a jury charge for the lesser-included offense of sexual assault, (2) a charge for what he alleges to be the lesser-included offense of indecency by exposing oneself, and (3) an instruction regarding effective consent.

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a), (e) (a first-degree felony).

Appellant also asserts the trial court abused its discretion by admitting into evidence a note written by the victim before she met with Appellant. We affirm.

## BACKGROUND

In January 2021, an indictment issued alleging that on or about July 12, 2020, Appellant intentionally and knowingly caused the penetration of the sexual organ of A.G.[2] (count 1) and A.G.'s mouth (count 2) by his sexual organ without her effective consent. For each count, the indictment alleged that Appellant by his acts and words, in A.G.'s presence, threatened to cause or place A.G. in fear that death or serious bodily injury or kidnapping would be immediately inflicted on A.G.[3]

In February 2022, a two-day jury trial was held. A.G. testified that during the relevant time period, she was living with her father. She was fourteen years old, stood 4'11" tall, and weighed less than 100 pounds. A.G. was active on the app Snapchat and posted a video. The Appellant, age 21, responded to her post, which led to a conversation between the two. A.G. asked how old Appellant was, and he lied, saying he was 18 years old. When Appellant and A.G. exchanged photos, Appellant masked his identity by sending a photo of another male. When A.G. told Appellant she was 14 years old, Appellant suggested she tell her parents Appellant was sixteen. During these conversations, A.G. confided in Appellant that she was a virgin, had never been on a

---

[2] To protect the privacy of the victim, we identify her by her initials. *See* TEX. CONST. art. 1 § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process."). *See Thompson v. State*, No. 07-20-00101-CR, 2022 Tex. App. LEXIS 1849, at *1 n.1 (Tex. App.—Amarillo Mar. 21, 2022, no pet.) (mem. op., not designated for publication).

[3] Originally a four-count indictment, the State opted to try only counts one and two.

date, and had never kissed anyone. Appellant replied that he, too, was a virgin and that he would be her first kiss.

Appellant and A.G. eventually planned to meet in person July 12, 2020, at around 5:00 a.m., while her family was asleep. Appellant told A.G. he wanted her to wear a blindfold so that he could surprise her with some gifts.[4] She declined, offering her point of view: "I'm 14 and I'm going to sneak out with someone who is basically an adult and they want to blind fold me before I can actually get to see them[.] It's scary." Appellant withdrew his request for A.G. to wear the blindfold.

The conversation continued over how they would initially meet. A.G. expressed caution over not having yet met Appellant and wanting to meet before she got in his vehicle. Appellant reiterated excitement about giving A.G. her first kiss. Eventually, Appellant told A.G. he would park beside her house at 5:07 a.m. Before leaving her home, A.G. wrote a message on a paper plate and placed it under her pillow. Over Appellant's objection, the State admitted the note into evidence. A.G. read the note to the jury:

> Dear whoever is reading this, it's [A.G.]. If you are reading this, then chances are something really bad happened. If you are looking for me, I went with this guy named Mason Munoz. He is 18 years old, or at least that is what he told me. Anyways, he lives in Wichita [Falls] and apparently next month he will be working in Houston if that helps. . . He is six foot, Mexican, abs, curly hair, and that's all I know. I love you—or I love all of y'all.

At the appointed time, she went outside and saw a car backed into a parking lot near her house. Although she had agreed to meet Appellant halfway, no one emerged

---

[4] He added, "you have to trust me[.] It's scary at first but this is how I was taught to gain trust."

3

from the car. A.G. walked to the back passenger door of the car and checked the time on her phone. When A.G. looked up, she saw a hand approaching and was pulled into the vehicle's backseat. She was slammed against the back of the driver's seat and the car door.

Her head hurt. She was afraid Appellant was going to rape and kill her. Appellant choked A.G. with his left hand while his right hand covered her mouth. Appellant commanded A.G. to take her clothes off. When she hesitated, he choked her harder and told A.G. that if she didn't remove her clothes, he would kill her.

A.G. tried to negotiate her way out of the situation, saying she would pretend nothing had happened if he would just let her go. Appellant choked A.G. and then began to remove her pants. A.G. testified that when Appellant told her to remove her sweater and bra, she complied because she feared she was going to die. Appellant also undressed.

Appellant then asked A.G. whether she was meeting someone. When A.G. asked whether Appellant was the person she had agreed to meet, he denied knowledge of what she was talking about. Under stress, A.G. could not remember the name of the man she had agreed to meet, so Appellant again choked her and slammed her head against the window.

Appellant separated A.G.'s legs and threatened that if she didn't hold them open, he would do it for her, and it would hurt. Then, Appellant forcefully engaged in vaginal and oral sex with A.G. At one point, A.G. attempted to push Appellant away, but he

4

became angry and started choking her again. She began gasping for air as he continued choking her. She told him she could not breathe but he continued.

A.G., still unable to breathe, testified that she "decided to give up and stop fighting because maybe it would end faster." Appellant then ejaculated, grabbed her jacket, threw it at her, and told her to get dressed. He finished dressing and jumped into the driver's seat and started the car. When Appellant pulled near her house, he opened the back door to let her out. Appellant warned A.G. not to say anything. Then he smacked and grabbed her bottom as she walked toward her home. A.G. testified at that point, "I just remember feeling like an object, like after all that, and I just – that broke me."

A.G.'s stepmother testified that she found A.G. on the home's floor; A.G. reported she had been raped.[5] Her family took her to a police station and then to a hospital; a SANE exam was performed. While A.G. was still being treated, Appellant messaged that he wanted to see A.G. again. A.G. identified Appellant as her assailant from a photo-lineup.

The nurse who performed the SANE examination testified about the account A.G. had given to her; it corroborated A.G.'s trial testimony. The nurse testified about active bleeding in A.G.'s vaginal areas.

A forensic scientist with the Department of Public Safety performed testing that compared Appellant's DNA to buccal swabs obtained from A.G.'s vulva. He testified the

---

[5] During cross examination, she testified that she did not see any bruises or injuries on her stepdaughter and described A.G. as overwhelmed and shaking.

test results revealed that Appellant was "7.92 nonillion"[6] times more likely to have contributed the recovered DNA than an unrelated, unknown individual.

During the charge conference, Appellant's counsel requested that the court include lesser-included offense charges for sexual assault and indecency by exposing oneself; Appellant also requested an instruction on effective consent. The trial court denied Appellant's requests.

The jury returned a verdict of guilty on both counts of aggravated sexual assault, and, after the punishment phase wherein evidence of Appellant's multiple extraneous acts was introduced, assessed punishment of ninety-nine years' confinement on each count to be served consecutively. On appeal, Appellant does not contest the sufficiency of the evidence supporting the jury's verdict or the sentence imposed.

**ISSUES ONE, TWO, AND THREE—ALLEGED JURY CHARGE ERROR**

Appellant contends the trial court erred when it denied him jury instructions for sexual assault,[7] indecency by exposing oneself,[8] and effective consent. He theorizes he was entitled to the instructions because the evidence showed (1) A.G. agreed to meet

---

[6] He testified that one nonillion means one, followed by thirty zeros, a "ludicrously large number." The Court takes judicial notice that one billion appears as one, followed by nine zeros. The population of humans on planet Earth was estimated to be 7.9 billion in 2021.

[7] Section 22.011 of the Texas Penal Code provides, in pertinent part, that a person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent and causes the penetration of the mouth of another person by the sexual organ of the actor, without the other person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A), (B).

[8] Section 21.98 of the Texas Penal Code provides, in pertinent part, that a person commits the offense of indecent exposure "if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire or any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a).

Appellant; (2) neither A.G.'s stepmother nor the SANE nurse observed any injuries or bruising after the incident; (3) A.G.'s clothing was clean and intact post-incident; (4) Appellant did not put her in fear of serious bodily harm by his words or actions; (5) Appellant opened her car door after the incident; and (6) both participants removed their clothing before the incident.  We disagree that the instructions were appropriate.

To determine whether an instruction on a lesser-included offense should be given to the jury, the appellant must show that the answer is "yes" to two questions:

- Are the elements of the lesser-included offense included within the proof necessary to establish the offense charged? and

- Is there some record evidence that would permit a rational juror to find the defendant guilty of only the lesser offense?

*See State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012).  On the second question, there must be affirmative evidence that raises the lesser-included offense and rebuts or negates an element of the greater offense.  *Cavazos*, 382 S.W.3d at 377.  It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016), there must be some evidence directly germane to the lesser-included offense*.  Cavazos,* 382 S.W.3d at 385.  While the evidence may be "weak or contradicted," the evidence must be more than mere speculation to obtain a lesser-included offense instruction.  *Id.*

## (1) SEXUAL ASSAULT

Sexual assault is a lesser-included offense of aggravated sexual assault.  *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993).  The elements of the two offenses

are identical with the exception that an aggravated sexual assault requires evidence of an aggravating factor.  *See* TEX. PENAL CODE ANN. § 22.021(1), (2).  The aggravating factor pleaded by the State in its indictment is that Appellant by his acts and words, in A.G.'s presence, threatened to cause or place A.G. in fear that death or serious bodily injury or kidnapping would immediately be inflicted on her.  *Id.* at § 22.021(a)(1), (2)(A)(ii).  Thus, to permit a jury to rationally find that, if Appellant was guilty, he was only guilty of the lesser-included offense of sexual assault, Appellant would have to establish that the record contains affirmative evidence raising the lesser-included offense of sexual assault, *and* that rebuts or negates the aggravating element of the greater offense of aggravated sexual assault.  *Cavazos*, 382 S.W.3d at 386.  As applicable in this case, Appellant must establish that the record contains "some" evidence that rebuts or negates any evidence that Appellant threatened to cause or place A.G. in fear of death or serious bodily injury or kidnapping during the incident.

The evidence shows Appellant threatened to kill A.G. and that she feared for her life.  A.G.'s testimony shows that Appellant slammed A.G.'s head against the car's interior, repeatedly choked her when she refused to comply and resisted his sexual assault, and expressly threatened to kill her.  Appellant's proffered evidence – that A.G. voluntarily agreed to see him (before the assault), that A.G.'s stepmother and the SANE nurse did not see injuries or bruising, and that A.G.'s clothing appeared clean and intact – does not have any tendency to rebut or negate the evidence of Appellant's forcible assault and threats.  Moreover, such evidence would be more suggestive of a defense for an acquittal, which is an inadequate basis for complaining about the failure to include a lesser-included offense in the court's charge.  *See Lofton v. State*, 45 S.W.3d 649, 652

8

(Tex. Crim. App. 2001). To raise an issue of a lesser-included offense, "[t]he evidence must establish that if a defendant is guilty, he is guilty only of the lesser-included offense." *Id.* (citing *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000)).

Thus, we conclude that because the record does not contain any evidence that would indicate Appellant was only guilty of sexual assault rather than aggravated sexual assault, the trial court did not err by refusing Appellant's requested instruction on sexual assault. *See Ramos*, 865 S.W.2d at 465; *Walker v. State*, No. 12-04-00320-CR, 2006 Tex. App. LEXIS 2934, at \*8–9 (Tex. App.--Tyler Apr. 12, 2006, no pet.) (mem. op. not designated for publication). We overrule Appellant's first issue.

### (2) INDECENT EXPOSURE

Appellant also contends that the trial court was required to include indecent exposure as a lesser-included offense of aggravated sexual assault. He contends the elements of the two offenses overlap, except that aggravated assault requires two additional elements. It is unnecessary to decide whether the elements of indecent exposure overlap with aggravated sexual assault because Appellant fails to show that some evidence would permit a rational juror to find the defendant guilty of only indecent exposure. As indicated above, the evidence must be such that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *See Cavazos*, 382 S.W.3d at 385.

There is certainly some testimony that Appellant exposed himself to A.G. before he assaulted her. Critically, however, such evidence does not rebut or negate any element of aggravated sexual assault. No evidence, for example, would allow jurors to

9

find that Appellant exposed himself to A.G. in an isolated incident or as a separate offense. Instead, all the evidence reflects that Appellant exposed himself to A.G. during the course of sexually assaulting A.G. As the Court of Criminal Appeals wrote in *Aekins v. State*, 447 S.W.3d 270, 277 n.28 (Tex. Crim. App. 2014):

> [O]ne rape will frequently involve defendant's acts of exposing his genitals, then contacting the victim's genitals with his own, then penetrating the victim's genitals with his. It is a 'continuing crime' in the sense that the defendant commits several criminal acts on the way to completing the rape, but *the lesser acts of exposure and contact merge into the ultimate act of penetration*.

(emphasis added). *See also Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) ("The record in this case does not show an occasion during the assaults when the exposure was a separate offense. Under these incidents, exposure was incident to and subsumed by the aggravated sexual assault."). Because any offense of indecent exposure by Appellant was subsumed into the commission of the aggravated sexual assault, we conclude the trial court did not err by refusing Appellant's requested instruction on indecent exposure. We overrule Appellant's second issue.

### (3) EFFECTIVE CONSENT

At trial, Appellant requested that the jury receive an instruction on "effective consent," as defined by section 22.06 of the Texas Penal Code. Appellant's brief points to evidence regarding lack of bruising, the state of A.G.'s clothing, and Appellant opening A.G.'s car door as evidence that "[A.G.] had consented to engage in sexual intercourse."

We disagree. The source of Appellant's proffered jury instruction – section 22.06 of the Texas Penal Code – expressly applies to cases of assault, aggravated assault, or

deadly conduct.  On the other hand, the Legislature provides a separate discussion regarding consent in section 22.011 for sexual assault offenses.  The trial court's discussion of consent in its charge tracks the language found in section 22.011(b)(7), when the charge said:

> An aggravated sexual assault is without the consent of the other person if the defendant compels the other person to submit or participate by the use of physical force or violence.

The charge's application paragraph was consistent with the general instruction because it told the jury that if it found from the evidence beyond a reasonable doubt that Appellant caused the penetration of the sexual organ of [A.G.] "without the effective consent of [A.G.], namely, the defendant compelled [A.G.] to submit or participate by the use of physical force or violence, and by acts or words the defendant placed [A.G.] in fear that death, serious bodily injury or kidnapping would be imminently inflicted on [A.G.]," then the jury will find the defendant guilty of aggravated sexual assault.

Consistent with the rules of statutory construction, we hold that section 22.06's definition of "effective consent" cannot subsume or negate the more specific definition of "effective consent" applicable to the sexual assault statutes.  *See Johnson v. State*, 227 S.W.3d 180, 183 (Tex. App.--Houston [1st Dist.] 2007, no pet.).[9]  Even though both provisions use the phrase "effective consent," a comparison between sections 22.06 and 22.011(b) and their related elements detail the critical differences.  Section 22.06 is

---

[9] Statutory construction is a question of law that we review de novo.  *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011).  When interpreting the language of a statute, we read words and phrases in context and construe them according to normal rules of grammar and usage. *Id.*  Statutes on same or similar subjects may be construed jointly, however, in case of a conflict, the specific statute applies over the general statute addressing the same or similar subject.  *Id.* at 588–89.

presented as a defense to assaultive conduct, whereas the elements of sexual assault incorporate the absence of consent into the offense. We hold that the trial court did not err in giving the more specific definition of consent found in section 22.011(b)(7), as alleged in the indictment, and in rejecting an instruction on the definition in section 22.06 that Appellant requested. Appellant's third issue is overruled.

### ISSUE FOUR—ALLEGED ERROR IN ADMISSION OF EVIDENCE

As his fourth issue, Appellant contends the trial court abused its discretion by admitting the note A.G. wrote on a paper plate before she met with Appellant. He asserts her statement was provocative in nature, intended to excite the jury, and cumulative because it was a reiteration of A.G.'s testimony related to the incident. *See* TEX. R. EVID. 403. We disagree.[10]

Under Rule of Evidence 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or other problems not relevant here. TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). The rule does not permit a trial court to exclude otherwise relevant evidence when the evidence is "merely prejudicial—it must be unfairly prejudicial" *and* substantially outweigh any probative value. *Stone v. State*, 635 S.W.3d 763, 760 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013)). Evidence is

---

[10] We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will affirm the trial court's ruling unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

"unfairly" prejudicial if it tends to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000).

A.G.'s note is directly relevant to the State's prosecution because it is probative of Appellant's identity as the person A.G. had agreed to meet immediately before her assault. The trial evidence conflicted in its presentation of the person with whom A.G. was communicating (age 18, different photo) from the person A.G. identified to police and in court as her assailant. The messages planning the initial meeting suggested that A.G. wear a blindfold. In the midst of the sexual assault, A.G. asked her assailant whether he was the person whom she had agreed to meet, and he denied any knowledge. A.G.'s note that she was meeting with "Mason Munoz" necessarily connected the Appellant to the assault beyond A.G.'s identification of his photograph and provided the context for jurors to understand how she was lured outside.

Appellant does not cite to any particular language or phrase in the note that he believes is prejudicial. He merely casts A.G.'s statement as "provocative" and "bent on exciting the reader" without giving any explanation how the reader was provoked/excited by the remarks, and without a showing of how the probative value would be substantially outweighed by any danger of unfair prejudice. Moreover, the time taken by the State to develop the evidence was minimal, and the State did not refer to her note in closing argument.

On balance, we conclude the trial court did not abuse its discretion in admitting A.G.'s note and testimony over Appellant's Rule 403 objection. Appellant's fourth issue is overruled.

13

**CONCLUSION**

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.


Lawrence M. Doss
Justice


Do not publish.